**\*NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LEMONT LOVE, | : : : : : : : : : : : : | Civil Action No. 14-5629 (SDW) |
| Plaintiff, | | |
| v. | | **OPINION** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | | |
| Defendants. | | May 12, 2015 |

**WIGENTON**, District Judge:

Presently before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment (ECF No. 13). Plaintiff, Lemont Love, filed a brief in opposition (ECF No. 14), to which Defendants replied. (ECF No. 17). Plaintiff thereafter filed a response to Defendants' reply. (ECF No. 18). Also before the Court is Plaintiff's motion for leave to file a supplemental complaint (ECF No. 9), which Defendants opposed. (ECF No. 10). For the following reasons, the Court will dismiss the complaint and deny Plaintiff's motion for leave to file a supplemental complaint.

**I. BACKGROUND**

The following is drawn from the allegations contained in Plaintiff's complaint. (Document 1 attached to ECF No. 1). Plaintiff, Lemont Love, is a convicted state prisoner currently confined at Northern State Prison. Prisoners at Northern State Prison are subject to a New Jersey Department of Corrections ("DOC") policy which prohibits them from adding cell

phones to the list of approved numbers they are permitted to call through the prison phone system. (Complaint Exhibit A, Document 1 attached to ECF No. 1 at 11). Plaintiff alleges that, as a result of these regulations, he is "unable to add the telephone numbers of many of his friends and family, including . . . his daughter, fiancé and lawyer." (Document 1 attached to ECF No. 1 at 3). Plaintiff also alleges that when he attempted to make contact with his lawyer's office via a collect call, he was informed that the number he had dialed would not accept collect calls, even though Plaintiff's lawyer's office apparently does accept such calls. (*Id.* at 4). Plaintiff further states that the DOC has specifically requested that their telephone provider not allow attorneys to accept collect calls from DOC facilities, including Northern State Prison. (*Id.*). According to Plaintiff, this collect call policy exists to force inmates and their lawyers to purchase prepaid telephone accounts. (*Id.* at 6).

Plaintiff also claims that the prison has deducted funds from his inmate account in excess of the amount allowed by DOC regulations. Plaintiff alleges that the DOC has a rule which requires "the business office to deduct non[-]indigent funds in excess of the one time monthly amount of $15.00." (*Id.* at 4). Plaintiff then states that his account has been subject to deductions multiple times in a single month "leaving him with less than $15.00 per month" to spend on various needs at the commissary, including legal mail, soap, stamps, envelopes, toothpaste, and paper. (*Id.*). Plaintiff appears to be asserting that prison rules require that only amounts in excess of $ 15.00 per month be deducted by the prison, and that prison personnel have not followed this rule, and have thus deprived him of property. (*Id.*).

In the supplemental complaint Plaintiff seeks to add several further claims based on the following facts. On November 1, 2014, Plaintiff purchased several items from the prison canteen.

2

(ECF No. 9 at 10). While at the canteen, Plaintiff aided another prisoner in carrying several items for a short period. (*Id.*). After the other inmate had departed, Plaintiff was apparently left inadvertently carrying a jar of hair grease belonging to the other inmate. (*Id.*). Plaintiff alleges that, while leaving the canteen, C.O. Marsh stopped him to check his purchases against his receipt from the canteen and discovered the hair grease which was not on Plaintiff's receipt. (*Id.*). Marsh instructed Plaintiff to throw the grease away, but Plaintiff refused and requested to speak to a sergeant. (*Id.*). Plaintiff was then instructed to follow Marsh into another room, at which point Marsh allegedly began to threaten and berate Plaintiff. (*Id.*). A second officer, C.O. Wasik, was also in the room at the time, and also apparently yelled at Plaintiff. (*Id.*). Plaintiff again requested to speak with a sergeant, but the officers refused and threatened to give him something about which to complain if he did not cease his "bitchin'." (*Id.*).

Plaintiff was then led into another room with a chair and instructed to sit. (*Id.* at 10-11). Wasik, Marsh, and a third corrections officer named Doyle then all resumed yelling at Plaintiff until Wasik departed to retrieve the other inmate who had purchased the grease. (*Id.* at 11). When Wasik and the other inmate returned, both Plaintiff and the other inmate were given "blue sheets" which were then thrown out. (*Id.*). It is unclear what these blue sheets were, or how they are relevant to Plaintiff's claims. Officer Wasik then filled out a confiscation form and instructed Plaintiff to sign it, which Plaintiff refused to do without first reading the form. (*Id.*). Wasik apparently then became impatient, threatened to call for assistance, and "snatched the paper out of Plaintiff's hand." (*Id.*). The paper allegedly caused a large paper cut to Plaintiff's hand. (*Id.*). The officer then wrote upon the sheet that Plaintiff had refused to sign. (*Id.*). Plaintiff alleges that he then told the officers he would file a lawsuit against them. (*Id.*). Officer Doyle then

3

threatened to "tear Plaintiff's cell up every day" if Plaintiff filed a complaint. (*Id.*). The officers then seized Plaintiff's canteen receipt without providing a confiscation sheet. (*Id.*). Plaintiff alleges that he was thereafter "forced to stand outside in the freezing rain without a coat for no reason for an extended period of time (20-30 min[utes])." (*Id.*).

Upon returning to his unit, Plaintiff filed a report and a request to go to the medical unit. (*Id.*). Plaintiff was thereafter given an antibiotic ointment to treat the paper cut to his hand while at the medical unit on November 4, 2014. (*Id.*). Plaintiff also alleges that, while returning to his unit, another correction's officer named Islam stopped him and apologized for the behavior of the other officers. (*Id.* at 12).

As to Defendants Lanigan and Nelson, Plaintiff states that they have instituted policies which "allow miscreant [corrections officers] to violate the rights of prisoners without fear of consequences." (*Id.*). Plaintiff alleges that complaints raised by officers are heard the following day, while prisoner complaints can go as long as a month before a hearing, which usually results in no consequences for the officer. (*Id.*). Plaintiff also alleges that the new inquiry form does not provide prisoner's the opportunity to report an officer's behavior. (*Id.*).

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v.*

4

*Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B.   Claims raised in Plaintiff's original complaint**

42 U.S.C. § 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, Plaintiff must show that "he was a deprived of a federal constitutional or statutory right by a state actor." *Id.* When evaluating the merits of a § 1983 claim, the Court must identify the contours of the underlying right Plaintiff claims was violated and determine whether Plaintiff has properly alleged the violation of such a right at all. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). This Court construes Plaintiff's complaint as raising the following claims: a First Amendment claim for denial of communication with family

5

and friends, a First and Sixth Amendment claim for denial of access to courts in so much as Plaintiff claims he cannot contact his attorney, a Fourteenth Amendment Due Process claim for the deprivation of property in the form of the money in Plaintiff's prison account, and an Eighth Amendment claim for cruel and unusual punishment.[1]  The Court will discuss each claim in turn. Because this Court will dismiss all of the claims raised in Plaintiff's original complaint with or without prejudice, the Court need not consider Defendants' alternative motion for summary judgment and thus does not address the exhaustion issue.

### 1. Plaintiff's First Amendment claim for denial of communication

Plaintiff first claims that he has been denied the right to communicate with family and friends.  "Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable means."  *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *5 (D.N.J. Oct. 2, 2012).  "The constitutional right at issue has been described as the right to communicate with people outside prison walls" and telephone use provides one means of exercising that right.  *Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009).  Prisoners, however, "ha[ve] no right to unlimited telephone use, and reasonable restrictions on telephone privileges do not violate their rights."  *Id.* at 522.  A prisoner's right to access to a telephone is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).  Regulations

---

[1] In his complaint, Plaintiff also pleads that Defendants' actions were violative of his equivalent state constitutional rights.  As Plaintiff has pled that he seeks redress only under § 1983, and as state law violations are not actionable under the statute, Plaintiff's state constitutional claims fail to state a claim for relief under § 1983 and will be dismissed.  *See Woodyard*, 514 F. App'x at 180.

restricting telephone use have been routinely upheld as reasonable. *Id.* Likewise, where a prisoner has access to alternative means of communicating with family and friends outside of prison, such as via the mail or in person visits, restrictions on telephone use are viewed as less serious and are more likely to be found reasonable. *See Johnson v. Demico*, No. 10-2265, 2011 WL 2181117, at *4 (D.N.J. June 1, 2011).

Here, Plaintiff asserts that his rights have been violated in so much as he is unable to call numbers associated with cell phones. He has not alleged that the prison has otherwise restricted his phone usage in an unreasonable manner (such as by limiting the number of calls he can make, or unreasonably limiting the times during which calls can be made). Indeed, Plaintiff as much as admits that he is able to call landline telephone numbers. Likewise, Plaintiff has not alleged that he is unable to receive in person visits or that the policy prevents him from communicating with his family through the mail. Plaintiff asserts, however, that the restriction as to cell phone numbers is unreasonable because any crime which a prisoner may commit by calling a cell phone could be accomplished just as easily by calling a landline. Even were Plaintiff's assertion accurate, the potential for criminal activity, however, is not in and of itself the sole basis on which the prison can limit communication. *See Almahdi*, 310 F. App'x at 522 (telephone restrictions may be based on the legitimate security interests of a prison). Plaintiff does not provide what explanation, if any, was provided for the policy by Defendants or other prison officials, and thus his argument may not be addressing the basis for the restriction at all. As Plaintiff has not alleged that alternative means of communicating with his family and friends, such as through in person visits or through the mail, have been denied, and as Petitioner has not alleged that he has been provided with inadequate means to make telephone calls to landline telephones, and as Plaintiff

7

has failed to alleged sufficient facts to permit an inference that the prison's policy falls outside the range of reasonable limitations which are associated with rational penological interests, Plaintiff has failed to present a plausible claim for relief, and this claim must therefore be dismissed without prejudice.   *See Johnson*, 2011 WL 2181117 at *4.

**2.   Plaintiff's Denial of Access claim**

Plaintiff next contends that the prison's phone policies have also prevented him from contacting his attorney, which is effectively a denial of access claim under the First and Fourteenth Amendments.   Generally, a denial of access claim may only proceed in two types of cases: those dealing with a Plaintiff's challenges to his sentence, and those dealing with the conditions of his confinement.   *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).   To make out such a claim, a plaintiff must normally show that they suffered an actual injury in so much as they have lost a "chance to pursue a 'nonfrivolous' or 'arguable' underlying claim," and that they have no other remedy that may be awarded in recompense for the lost claim.   *Id.*

As explained in *Stokes*,

> an inmate's telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." [*Washington*, 35 F.3d at 1100.]   Correspondingly, an inmate's right to communicate even with his/her legal counsel is not unlimited. *See Inqualls v. Florio*, 968 F. Supp. 193, 203-04 (D.N.J. 1997) ("[L]imited access to telephone calls is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); *Aswegan v. Henry*, 981 F.2d [313, 314 (8th Cir. 1992)] (upholding a state penitentiary's policy of prohibiting prisoners from making toll-free calls, even to their attorneys, because the prisoners had alternative methods of exercising the right to access the courts, and had not alleged any irreparable harm or prejudice from the policy).   Hence, if an inmate has an alternative method to communicate freely and privately with his counsel, it is

8

> less likely that the restrictions on telephone use will rise to the level of a constitutional violation.  *See Inqualls*, 968 F. Supp. At 203-04; *Aswegan*, 981 F.2d at 314.
>
> "In sum, three questions relevant to [the] issue of telephone access to counsel and the courts are (1) whether [the prisoner] has alleged facts giving rise to an inference that no legitimate penological interest was served by the . . . Defendants' actions, (2) whether he has sufficiently alleged that the . . . Defendant's caused him an 'actual injury,' and (3) whether he had alternative avenues through which he could communicate with his attorneys and the courts."  *Aurano v. Main*, [No. 07-3867, 2010 WL 251590, at *10 (D.N.J. Jan. 15, 2010).

*Stokes*, 2012 WL 4662487 at *5-6.

As with Plaintiff's claims regarding communication with his family, he has not pled that he is unable to communicate with his attorney through alternative means, such as by in person visitation.  More problematically, Plaintiff has not alleged that he suffered any actual injury as a result of his alleged inability to call his attorney.  While Plaintiff is correct that in certain circumstances denial of access to an attorney can violate an individual's Sixth Amendment rights and therefore not require a showing of prejudice to make out a denial of access claim, s*ee, e.g., Perry v. Leeke*, 488 U.S. 272, 278-80 (1989), Plaintiff has not alleged sufficient facts to show that his Sixth Amendment rights had attached at the relevant time.  *See, e.g., United States v. Diehl-Armstrong*, 504 F. App'x 152, 156 (3d Cir. 2012) (Sixth Amendment right to counsel does not attach until adversary proceedings have commenced).  Plaintiff, a convicted prisoner, does not allege that he is subject to any further criminal charges, nor that he is currently in the process of an appellate or collateral attack on his conviction.  Even if Plaintiff's Sixth Amendment rights had attached during the relevant time period, Plaintiff has failed to allege that he did not have other, adequate, alternative means of communicating with his attorney, and therefore he has failed

9

to plead sufficient facts to indicate that his denial of access claim is plausible. *Stokes*, 2012 WL 4662487 at *5-6; *Ingalls*, 968 F. Supp. At 203-04 ("limited access to telephone calls . . . is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits). This claim must therefore be dismissed.

### 3. Plaintiff's Fourteenth Amendment Due Process claim

Plaintiff also alleges that the prison has, in contravention to the applicable rules, deprived him of the money in his prison account. Where a state actor deprives an individual of property without authorization, either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *but see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982) (holding that such remedies do not satisfy Due Process where the deprivation resulted from established state procedure); *see also Miller v. Fraley*, No. 12-4470, 2015 WL 511296, at *11 (D.N.J. Feb. 6, 2015). The State of New Jersey has provided a proper post-deprivation remedy for the unauthorized deprivation of property through the New Jersey Tort Claims Act. *See N.J. Stat. Ann.* § 59:1-1, *et seq.*; *Miller*, 2015 WL 511296 at *11.

As New Jersey has an appropriate post-deprivation remedy, Plaintiff's Fourteenth Amendment deprivation of property claim would only be actionable if the taking of funds from Plaintiff's account was due to state procedure. Plaintiff, however, specifically pleads that the deprivation of funds from his account is in direct contravention of prison rules requiring that he be

10

left with at least $15.00 in his prison account for the purchase of necessities. As such, he has pled that the taking was unauthorized, thus the post-deprivation remedy available to Plaintiff requires that this claim be dismissed. *Miller*, 2015 WL 511296 at *11.

### 4. Plaintiff's Cruel and Unusual Punishment claim

Plaintiff finally contends that the prison's actions which resulted in the removal of funds from his account amount to cruel and unusual punishment as they prevent him from purchasing the bare necessities. An Eighth Amendment conditions of confinement claim such as this requires Plaintiff to plead both an objective and subjective element. *Watson v. Secretary Penn. Dep't of Corr.*, 567 F. App'x 75, 79 (3d Cir. 2014). Plaintiff must first plead that his being deprived of hygiene products was sufficiently serious from an objective viewpoint. *Id.* Only those deprivations which deny a plaintiff "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment conditions of confinement claim. *Id.* A prisoner's minimal necessities "include provision for basic hygiene." *Id.* A claim is not made out, however, where a plaintiff claims only that he "sometimes goes days without toothpaste[,] . . . is only able to shave once a month[,] and . . . receives [only] two small bars of soap once a week." *Id.* 79-80. If Plaintiff can show that the deprivation suffered was sufficiently severe, he must then also allege the subjective element: that Defendants acted with a "sufficiently culpable mind." *Id.* This requires Plaintiff to properly allege that Defendants acted with "deliberate indifference, a state of mind equivalent to a reckless disregard of a known risk of harm." *Stokes*, 2012 WL 4662487 at *3; *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

Plaintiff alleges that, because his account has been subject to deductions reducing his available funds below $15.00, he is often forced to choose carefully in purchasing soap, toothpaste, paper, and envelopes. Plaintiff does not state which necessities are provided by the prison, but as he does not allege that he is forced to purchase other needs, such as toilet paper, one presumes that at least some of the bare necessities are provided by the prison to Plaintiff. As to the soap, toothpaste, and paper materials Plaintiff alleges that he must choose between, Plaintiff does not allege that he has been denied the ability to purchase the items, only that he, at times, has been forced to choose between them as to which he purchases in those months where he has been fined or overcharged and had his account reduced below $15.00. As such, Plaintiff's allegations are comparable to those which the Third Circuit found insufficient to form the basis of a conditions of confinement claim in *Watson*, where the plaintiff could acquire only a limited amount of toothpaste, soap, and razors in any given month. 567 F. App'x at 79-80. Plaintiff has not alleged sufficient facts, taken as true, to support a conclusion that the conditions in which he is confined are such that he has been denied the "minimal civilized measure of life's necessities," and his claim is therefore not plausibly pled and must be dismissed. *Iqbal*, 556 U.S. at 678.

Plaintiff has also failed to sufficiently plead his allegations to support the inference that Defendants acted with deliberate indifference to his health and safety. Deliberate indifference requires that a prison official knew of and disregarded an excessive risk to the health and safety of an inmate. *Farmer*, 511 U.S. at 835. The official must have been aware of sufficient facts from which he could draw the inference that a substantial risk of serious harm existed, and he must also draw the inference. *Id.* at 837. Plaintiff alleges that Defendants were made aware of his claims because of complaints filed in the prison system and through a letter sent to Defendant Lanigan by

12

Plaintiff. Even acting under the assumption that Defendants knew of Plaintiff's predicament, the facts regarding Plaintiff's situation in which he must choose which items to buy from the commissary carefully are insufficient to establish an excessive risk to Plaintiff's health and safety. As the facts do not show that Plaintiff was under such a risk, the facts alleged would not support an inference that Defendants were deliberately indifferent to Plaintiff's health and safety. Thus, Plaintiff's claim must be dismissed. *Iqbal*, 556 U.S. at 678; *Farmer*, 51 U.S. at 835-37.

**5. The Department of Corrections and Prison are not "persons" subject to suit under § 1983 and must be dismissed with prejudice**

While each of plaintiff's claims discussed above shall be dismissed without prejudice, because certain defendants are not subject to suit under § 1983, the claims against those Defendants must be addressed further to the extent that they must be dismissed with prejudice. Section 1983 limits liability to "persons." Both prison facilities, such as Northern State Prison, and the New Jersey Department of Corrections of which they are a part are not "persons" under the statute. *See Ewing v. Cumberland Cnty.*, No. 09-5432, 2015 WL 1384374, at *25 (D.N.J. Mar. 25, 2015); *Brown v. New Jersey Dep't of Corr.*, No. 12-5069, 2014 WL 4978579, at *2 (D.N.J. Oct. 3, 2014); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (state department of corrections and state prison facilities are not "persons" under § 1983). The New Jersey Department of Corrections and Northern State Prison must therefore be dismissed from this action with prejudice.

In so much as Plaintiff seeks money damages, his claims against Defendants Nelson and Lanigan in their official capacities must also be dismissed with prejudice. A suit against a state

officer in his official capacity is not a suit against the officer, but against his office. *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013); *see also Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 (1989). A suit against a state officer is thus "no different from a suit against the state itself." *Grohs*, 984 F. Supp. 2d at 280. As the Eleventh Amendment bars suits for money damages against states, their agencies, or their departments, and state agencies are not "persons" amenable to suit under § 1983, an officer of a state agency cannot be sued for money damages in his official capacity under the statute. *Id.* Claims seeking injunctive relief, however, may proceed against an officer in his official capacity, as such claims are "not treated as actions against the state." *Id.* at 281 (quoting *Will*, 491 U.S. at 71 n. 10). As plaintiff sues Defendants Lanigan and Nelson in both their official and personal capacities, those defendants must be dismissed with prejudice in their official capacities only in so much as Plaintiff seeks money damages against them. *Id.* Only Plaintiff's claims against Lanigan and Nelson in their official capacities for money damages will be dismissed with prejudice, and all remaining claims against them shall be dismissed without prejudice.

### C. Plaintiff's motion to file a supplemental complaint

Plaintiff has also filed a motion requesting leave to file a supplemental complaint.[2] Under

---

[2] Although Plaintiff requested to "amend" his complaint under Rule 15(a), Plaintiff attempts to raise new claims arising out of events which occurred after the filing of the initial complaint. The filing of an amended complaint replaces an earlier pleading with a new pleading addressing matters which occurred prior to the filing of the original pleading, whereas the filing of a supplemental complaint merely adds to the original complaint events which occurred subsequent to the earlier pleading. *See Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 383 (M.D. Pa. 2009) (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1504 (3d ed. 2004). Plaintiff therefore is actually attempting to file a supplemental complaint under Fed. R. Civ. P. 15(d).

Rule 15(d), on motion and reasonable notice, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The Court may permit supplementation even though the original pleading is defective in stating a claim or defense."  Fed. R. Civ. P. 15(d).  Motions to supplement a pleading "are left to the sound discretion of the Court."  *Fancaster, Inc. v. Comcast Corp.*, No. 08-2922, 2010 WL 4320422, at *3 (D.N.J. Oct. 26, 2010) (quoting *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1134 (D.N.J. 1991)). Under most circumstances, a motion to file a supplemental pleading should be denied "only where there is undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of amendment."  *Albanian Assoc. Fund v. Twp. Of Wayne*, No. 06-3217, 2007 WL 4232966, at *1 (D.N.J. Nov. 29, 2007).   The Court may also deny a supplemental complaint "when it would raise new issues and unduly delay resolution of the case."  *Id.*

Courts have therefore properly denied requests to supplement a complaint where the supplemental pleading "relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint."  *Bohm v. Straw*, No. 12-16J, 2013 WL 100441, at *14 (W.D. Pa. Jan. 8, 2013) (quoting *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988)); *see also Dockery v. Wetzel*, No. 11-1368, 2013 WL 664931, at *3 (M.D. Pa. Feb. 22, 2013); *Seymour/Jones v. Lefebvre*, No. 90-2267, 1991 WL 165203 at *1 (E.D. Pa. Aug. 22, 1991); *Corp. Comm. Consultants v. Dubner Comp. Syst.*, 1982 WL 1879 at *4 (D.N.J. May 27, 1982); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1510 (3d ed. 2004).  As one court has recently observed, permitting a prisoner

15

to file a supplemental complaint containing claims only tangentially related to those in the initial complaint would "defeat the purpose of Rule 15(d), as well as the intention behind the Prison Litigation Reform Act . . . [by allowing prisoners] to tack on unrelated claims in a single lawsuit and avoid the payment of the required filing fee in a new action." *Dockery*, 2013 WL 664931 at *3.

Plaintiff, in his motion to supplement, seeks to add new claims arising out of events which occurred subsequent to the filing and removal of the initial complaint which are, at best, only tangentially related to his current complaint. Whereas the initial complaint deals with Northern State Prison's phone policies and allegedly improper deductions from Plaintiff's prison account, the supplemental complaint Plaintiff wishes to file instead deals with a specific instance which occurred in November of 2014 involving three corrections officers who were not previously part of this litigation. Although Plaintiff's supplemental complaint still raises claims under § 1983, those claims arise under theories of liability wholly different from those raised in the initial complaint including excessive force, failure to protect, and first amendment retaliation. The only connection between the initial complaint and the supplemental pleading proffered by Plaintiff is that Defendants Lanigan and Nelson are again named as defendants, albeit via supervisory liability. Thus, in essence, Plaintiff is attempting to use a supplemental complaint as a means of tacking on these unrelated claims to his earlier complaint which would "defeat the purpose of . . . the Prison Litigation Reform Act" by allowing him to avoid payment of the required fee for filing these new, unrelated claims in a new action. *Dockery*, 2013 WL 664931 at *3. As Plaintiff's supplemental complaint seeks to add new claims which arose after the initial complaint which are not related to his previously pled claims, this Court will deny the motion to file a supplemental complaint.

16

Plaintiff is free, however, to raise the claims contained in his supplemental complaint by filing a new complaint in a separate action.

### III. CONCLUSION

For the reasons stated above, Plaintiff's complaint will be dismissed and his motion for leave to file a supplemental complaint will be denied.   An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**
