***NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LEMONT LOVE, | : : : | |
| Plaintiff, | : : | Civil Action No. 14-5629 (SDW) |
| v. | : : | **OPINION** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | : : : | |
| Defendants. | : : | |

**WIGENTON**, District Judge:

Presently before the Court is Plaintiff Lemont Love's motion for leave to file an amended complaint. (ECF No. 21, 23). Defendants filed a brief in opposition (ECF No. 24), to which Plaintiff has responded. (ECF No. 25). For the following reasons, the Court will deny Plaintiff's motion for leave to file an amended complaint.

**I. BACKGROUND**

This Court has previously summarized the facts raised in Plaintiff's original complaint. (ECF No. 19 at 1-4). Thus, only a brief summary of the claims raised in Plaintiff's proposed amended complaint is necessary here. Plaintiff, Lemont Love, is a convicted state prisoner currently incarcerated at Northern State Prison in Newark, New Jersey. Plaintiff seeks to file an amended complaint challenging the policies of Northern State Prison and the N.J. Department of Corrections on the grounds that they deny him his rights to communicate with family and friends. (ECF No. 21).

Specifically, Plaintiff claims that his rights to communicate are being infringed in three ways. First, Plaintiff alleges that, as his family and friends have cell phones and not landlines, a prison policy preventing prisoners from placing cell phones on their call lists prevents Plaintiff from calling his family and friends, including his daughter and fiancé. (*Id.* at 2-3). This policy exists for security reasons. (*Id.* at 3). Plaintiff alleges, as he did in his initial complaint, that the policy is unnecessary as any "nefarious activity that can be done with a cell phone can be accomplished using the forms of communication allowed by the" Department. (*Id.*). Second, Plaintiff alleges that his ability to communicate with his family and friends in writing is being inadvertently curtailed in so much as his prison account is being charged with fines in excess of the amount permitted by prison rules and policies. (*Id.*). Because he is being overcharged, Plaintiff alleges, he in turn has been unable to afford the paper and materials needed to write to others. (*Id.*). Plaintiff does not allege that any rule or policy of the prison prevents him from writing to his family or friends, however, only that his lack of funds sufficient to buy paper and related products logistically prevents his writing. Finally, Plaintiff alleges that his ability to receive in person visitation from family and friends is limited because his close family (including his daughter and fiancé) live several states away, and because another prison policy prevents former prisoners from visiting their friends who are still imprisoned. (*Id.* at 3-4).

As Defendants, Plaintiff names only Gary Lanigan, Commissioner of the New Jersey Department of Corrections, and Kenneth Nelson, the Administrator of Northern State Prison.[1]

---

[1] Although Plaintiff's proposed Amended Complaint also places "John Does 1-10" in the caption, he does not explain these alleged Defendants, nor does he plead any facts as to any John Does.

2

(*Id.* at 2). Plaintiff names both individuals as defendants only in so much as they have "established policies which violate Plaintiff's constitutional rights." (*Id.*). Although Plaintiff also states that Lanigan and Nelson may be liable for their failures to adequately train or supervise their subordinates after being placed on notice of the unlawful conduct which "constituted deliberate indifference and contributed to and directly caused Plaintiff's rights to be violated," Plaintiff has not pled any facts which would support a conclusion that Lanigan and Nelson are liable to him through any means other than their establishment of prison policies.[2]

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "In the absence of undue delay, bad faith or dilatory motive on the part of the movant, leave to amend should be freely given." *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, 493 F.3d 393, 400 (3d Cir. 2007). A district court acts within its discretion, however, where it denies leave to amend because the amendment would be futile. *Id.* "'Futility means that the complaint, as amended, would fail to state a claim upon

---

[2] To the extent that it at first it appears that Plaintiff's amended complaint seeks to re-raise his deprivation of property claim and add a claim challenging the prison's policy denying him visits by former prisoners, and that the actions of the subordinates in question are the allegedly wrongful taking of money from Plaintiff's accounts, Plaintiff makes it clear in his reply brief that he wishes only to raise a claim for denial of his right to communication and these facts are pled only in support of that claim. (ECF No. at 3-4). As Plaintiff has expressly stated that he does not wish to bring these two additional claims, this Court does not construe Plaintiff's complaint as attempting to raise these other potential claims.

which relief could be granted." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Amendment would therefore be futile where the proposed amended complaint would be subject to dismissal for failure to state a claim under Rule 12(b)(6). *See Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

In deciding whether a claim would be subject to dismissal under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). As the Supreme Court stated in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Plaintiff's Amended Complaint**

4

In his amended complaint, Plaintiff pleads only one claim: that Defendants are depriving him of his First Amendment right to communication with family and friends in violation of 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (the statute provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).

As this Court stated in its previous opinion dismissing Plaintiff's complaint,

> "[I]nmates have a right protected under the First Amendment to communicate with their family and friends by reasonable means." *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *5 (D.N.J. Oct. 2, 2012). "The constitutional right at issue has been described as the right to communicate with people outside prison walls" and telephone use provides one means of exercising that right. *Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009). Prisoners, however, "ha[ve] no right to unlimited telephone use, and reasonable restrictions on telephone privileges do not violate their rights." *Id.* at 522. A prisoner's right to access to a telephone is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Regulations restricting telephone use have been routinely upheld as reasonable. *Id.* Likewise, where a prisoner has access to alternative means of communicating with family and friends outside of prison, such as via the mail or in person visits, restrictions on telephone use are viewed as less serious and are more likely to be found reasonable. *See Johnson v. Demico*, No. 10-2265, 2011 WL 2181117, at *4 (D.N.J. June 1, 2011).

5

(ECF No. 19 at 6-7).

This Court has already addressed Plaintiff's arguments regarding the limitation on calls to cell phones and found them inadequate to establish an unconstitutional restriction on his communication rights. (ECF No. 19 at 6-8). Plaintiff adds to those allegations two additional arguments: that he can't afford to buy paper because of illegal overdrafts of his accounts and therefore can't write to his family members, and that his visitation rights are limited by the fact that his family lives out of state and he can't receive former prisoners as visitors. As to Plaintiff's claims that he can't visit with his family members, that argument cannot form the basis of a claim against Nelson or Lanigan as neither individual has in any way, under the facts alleged, caused that issue. Plaintiff's family cannot visit him in person solely because they live far away, Plaintiff has pled no restriction on their visitation of the prison because of prison policies. It is not the fault of the prison that Plaintiff's family cannot come to see him, but rather the result of choices made by Plaintiff's family, and such an argument cannot support Plaintiff's claim as a result.

Likewise with the lack of funds, Plaintiff has specifically pled that his lack of funds is a violation of the policies Defendants have put into place, thus alleging they are responsible for his inability to afford to write his family is a dubious proposition at best. Plaintiff has not pled that a rule or policy has been enacted which limits his ability to write home, only that he can't afford to do so because he lacks the funds. As such, no action which Plaintiff has pled either Defendant took has resulted in this inability, and there is no policy infringing on Plaintiff's ability to communicate with his family or friends through the mail. Plaintiff's inability to write home is the

6

result of his own financial difficulties,[3] and not any unlawful curtailment of his right to write.

Plaintiff's final contention is that one specific friend cannot visit him as he is a former prisoner and former prisoners are not permitted to visit their friends who remain incarcerated. Such a restriction, however, is entirely reasonable and Plaintiff has pled no basis for an inference that this policy is in any way improper or not rationally related to the prison's security interests. Despite this policy, Plaintiff retains his right to in person visits with his other family and friends, and thus this limitation does not establish that he has been denied his right to communication with the outside world.[4]

Plaintiff retains the ability under prison policies to write to his family and to receive in person visits, as well as the ability to call landline telephones. As such, the minor restrictions on his communication rights alleged by Plaintiff remain insufficient to form the basis of a claim of a violation of Plaintiff's First Amendment rights. *See Almahdi*, 310 F. App'x at 521-22; *Johnson v. Demico*, 2011 WL 2181117 at *4. As such, his amended complaint would be unable to survive a motion to dismiss for failure to state a claim for which relief can be granted, and Plaintiff's proposed amendment is futile. Plaintiff's motion for leave to amend will therefore be denied. *Budhun*, 765 F.3d at 259.

---

[3] Admittedly, if Plaintiff's allegations are accurate, the over-drafting of his account to pay fines would be unfortunate, but Plaintiff has an alternate redress for that issue through the New Jersey Tort Claims Act as addressed in this Court's prior opinion. (ECF No. 19 at 10-11).

[4] Plaintiff also decries the limitation on how frequently he can alter his call and in person visit lists to add new individuals. (ECF No. 21 at 4). Plaintiff is permitted to update these lists four times a year. Given the security concerns obviously associated with prison visitors and calls, this policy, too, appears entirely reasonable without further facts which would support an inference that this policy is not rationally related to the prison's penological and security interests. *See, e.g.*, *Almahdi*, 310 F. App'x at 521-22; *Johnson v. Demico*, 2011 WL 2181117 at *4.

### III. CONCLUSION

      For the reasons stated above, Plaintiff's motion for leave to file an amended complaint will be denied.   An appropriate order follows.


Dated: August 31, 2015                                 *s/ Susan D. Wigenton*
                                                            Hon. Susan D. Wigenton,
                                                            United States District Court